IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

JUL 0 7 1999

CLERK, U.S. ........... COURT
WESTERN DISTRICT OF TEXAS
BY _____
        .......... CLERK

JEANETTE LYNN SMITH,              )
                                  )
        Plaintiff(s),             )
                                  )
v.                                )     CIVIL ACTION NO.
                                  )     SA-98-CA-489-OG
MUTUAL SPRINKLERS, INC.,          )
                                  )
        Defendant(s).             )

## ORDER ACCEPTING, IN PART, AND REJECTING, IN PART, MEMORANDUM AND RECOMMENDATION

Before the Court is the Memorandum and Recommendation of the United States Magistrate Judge, filed in the above-styled and numbered cause on April 13, 1999, and Plaintiff Jeanette Lynn Smith's objections to the Memorandum and Recommendation, filed on May 14, 1999. The Magistrate Judge recommended that Defendant Mutual Sprinklers, Inc.'s motion for summary judgment be granted on both Smith's hostile environment and retaliation claims under Title VII. Having reviewed the matter de novo, however, see Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 646 (5th Cir. 1994); Longmire v. Guste, 921 F.2d 620, 623 (5th Cir. 1991), the Court denies the motion as to Smith's hostile environment claim but grants it as to her retaliation claim.[1]

Jeanette Smith, proceeding *pro se,* alleges two claims under Title VII in this lawsuit: one for sexual harassment and the other for retaliation. The Court first addresses Smith's sexual harassment claim, the more analytically difficult of the two. As the Supreme Court recently acknowledged in Burlington Industries, Inc. v. Ellerth, sexual harassment claims are commonly

---

[1] The facts underlying this lawsuit, set forth in the Magistrate Judge's recommendation, will not be repeated here except as necessary to the Court's analysis. Familiarity with the Memorandum and Recommendation is assumed.

58-

characterized into two groups:  those premised on a quid pro quo, and those premised on a hostile environment.   524 U.S. 742, 118 S. Ct. 2257, 2264 (1998).  The Court went on to explain that, although these terms do not appear in the text of Title VII, they "are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether."  Id.  They also are useful in considering whether a plaintiff has made out a prima facie case of discrimination.  As the Court explained in Ellerth:

> When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.  For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive.

Id. at 2265.  The Court went on to conclude that, because "Ellerth's claim involves only unfulfilled threats, its should be characterized as a hostile work environment claim which requires a showing of severe or pervasive conduct."  Id.

While the characterization of the plaintiff's claim in Ellerth was fairly simple, the different factual circumstances in this case make analysis of Smith's harassment claim more complex.  First, unlike the plaintiff in Ellerth, see 118 S. Ct. at 2262,  Smith was allegedly harassed by her coworkers, not any person with supervisory authority.[2]  Because those by co-workers had no

---

[2] Although Smith argues in her response to Mutual Sprinklers' motion that her co-workers "all held positions over Plaintiff, thus establishing them as part of the management team," (Pl.'s Resp. Mot. Summ. J. at 8), she has failed to present any evidence to support that contention and her verified statement, (see Doc. 6, Attachment), consistently refers to her harassers as co-workers or other employees.  In contrast, Mutual Sprinklers has submitted the affidavit of Mr. Kennemer, Smith's supervisor, who states that he "was the manager at that office and was her direct supervisor," and that "James Frederick Ely, Carlos Louis Kraly and Charles Wayne Martin were Ms. Smith's co-workers." (Def.'s Mot. Summ. J., Ex. A at 1.)  Consequently, the Court agrees that Smith has failed to demonstrate a genuine issue of material fact as to whether her alleged harassers were in a supervisory capacity.

authority to hire, promote or fire her, there is no quid pro quo element to her claim. It is therefore properly characterized as one for hostile environment. Furthermore, under Ellerth and its companion case, Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998), because the alleged harassment involved only coworkers, Mutual Sprinklers cannot be held vicariously liable for the discriminatory activity of its employees. Rather, its liability is determined under a negligence standard: that is, whether the company knew or should have known of the alleged harassment. See Farragher, 118 S. Ct. at 2289 (1998)(noting near unanimity of courts in applying negligence standard in instances of co-worker harassment ); see also Sharp v. City of Houston, 164 F.3d 923, 929 (5th Cir. 1999).

Smith's claim is likewise distinguishable from Ellerth in that she was actually terminated from her position at Mutual Sprinklers, unlike the plaintiff in Ellerth, who quit. See Ellerth, 118 S. Ct. at 2263. But that event does not transform Smith's otherwise straightforward hostile environment claim into one for wrongful termination. Rather, Smith's termination provides evidence that the harassment she experienced affected a term, condition or privilege of her employment–namely, her continued ability to function on the job. See, e.g. Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990)(recognizing that discharge from employment may evidence a discriminatory workplace environment); Brown v. Continental Baking Co., 891 F. Supp. 238, 243 (E.D. Pa. 1995)(termination of plaintiff was evidence that racially discriminatory hostile environment detrimentally his affected employment). See generally Meritor Savings Bank v. Vinson, 477 U.S. 57, 65 (1986)(sexual harassment is actionable "whether or not it is directly linked to the grant or denial of an economic *quid pro quo*," so long as it unreasonably interferes with an individual's work performance or creates a hostile work environment). While Mutual Sprinklers

3

may dispute any connection between the alleged harassment and her termination at trial, and Smith will bear the burden to prove such a causal connection,[3] the fact that she was terminated is not inconsistent with her assertion of a hostile environment claim, and in some courts' view, cannot even be asserted by the employer as a defense. See, e.g., Avery v. Delchamps, Inc., Civ. A. No. 93-2445, 1994 WL 637738 at *1 (E.D. La. Nov. 14, 1994)("If, as plaintiff alleges, the hostile working environment provoked the behavior for which he was fired, then defendant may not assert that basis as a defense to this action."); Broderick v. Ruder, 685 F. Supp. 1269, 1280 n. 10 (D.D.C. 1988)("Plaintiff's diminished performance cannot be asserted as a legitimate basis for her removal when that diminution is a direct result of the employer's discriminatory behavior."); Delgado v. Lehman, 665 F. Supp. 460, 467 (E.D. Va. 1987); Weiss v. United States, 595 F. Supp. 1050, 1057 (E.D. Va. 1984).

Despite her initial characterization of Smith's primary claim as one for hostile environment, Smith's termination apparently led the Magistrate Judge to analyze that claim as if it were one for disparate treatment. For example, after considering the elements necessary to state a prima facie claim for hostile environment, (see Mem. & Rec. at 10-11), the Magistrate Judge went on to apply a traditional McDonnell-Douglas burden shifting analysis, looking to evidence of Mutual Sprinklers' intent in terminating Smith and whether Smith had presented evidence demonstrating that the

---

[3] Here, Mutual Sprinklers alleges that Smith was fired from her position because her "job performance had deteriorated and there were repeated clashes between Ms. Smith and other staff members and their subordinates." (Def.'s Mot. Summ. J., Ex. A at 1.) Smith contends, however, that she diligently performed her work that any change in her attitude was a result of the harassment by her co-workers. (See Doc. 6, Attach. at 5). She further contests Mutual Sprinkler's allegation that she was only terminated after counseling as to her performance and has submitted evidence rebutting that contention. (See Def's Resp. Pl.'s Mot. Summ. J., Ex. B.)

company's explanation was a pretext for discrimination, (see id. at 16-17).  As several courts and commentators have noted, however, the McDonnell-Douglas burden shifting framework has little relevance to a hostile environment claim:

> Sexually hostile environment cases . . . require a different analysis for two reasons.  First, while unusual in other Title VII cases, claims of a sexually harassing environment often contain 'direct evidence' of discrimination in the form of conduct or comments that are overtly sexual.  As a matter of law, when a plaintiff presents direct evidence of discrimination there is no need to use the McDonnell Douglas formula.  Because the formula is intended to provide an inference of discriminatory intent when evidence of intent is otherwise missing, the presence of such direct evidence, if believed by the trier of fact, is sufficient to prove the employer's actions are discriminatory.
>
> The second reason why McDonnell Douglas does not apply is because the issue of intent, a required element of proof under the usual disparate treatment case under Title VII, is not required under the EEOC's regulations.  The Commission prohibits sexually offensive conduct that has the "purpose or effect" of interfering with an employee's work performance or of creating an intimidating and offensive work environment.  Because the element of intent has been rendered superfluous, we do not need the McDonnell Douglas formula as a device for inferring intent from circumstantial evidence.

Ernest C. Hadley & George M. Chuzi, Sexual Harassment:   Federal Law, ch. 3.I.A.1. (1997)(citations omitted);  see also Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1326 (8th Cir. 1994)(noting that inquiry into employer's intent irrelevant because "[a]n employer can never have a legitimate reason for creating a hostile environment."); King v. Auto, Truck, Indus. Parts & Supply, 21 F. Supp. 2d 1370, 1380 n. 8 (N.D. Fla. 1998)(noting limited utility of McDonnell-Douglas framework in hostile environment cases).  Instead, once a plaintiff makes out a prima facie case of discrimination based on hostile environment, the burden shifts to the employer to rebut some element of the prima facie case,  for example by proving that the harassment did not occur, that the events at issue were isolated or trivial, or that it did not have actual or constructive notice of the harassment.  See Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983 ).  Thus, to the extent

5

the Magistrate Judge relied on the <u>McDonnell Douglas</u> framework when analyzing Smith's hostile environment claim, and particularly by going forward to consider whether Mutual Sprinkler's reason for terminating Smith was pretextual, (<u>see</u> Mem. & Rec. at 17), that reliance was in error.

In the Court's view, the sole issue in this case is whether Smith has produced evidence to support a prima facie claim for hostile environment. To do so, Smith must show that: (1) she belongs to a protected class; (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition or privilege of employment, and (5) the defendant employer knew or should have known of the harassment and failed to take prompt remedial action. <u>Shephard v. Comptroller of Public Accounts of Texas</u>, 168 F.3d 871, 873 (5th Cir. 1999); <u>Farpell-Crosby v. Horizon Health Care</u>, 97 F.3d 803, 806 (5th Cir. 1996). The Court agrees with the Magistrate Judge that Smith has easily met the first through fourth elements of her prima facie case. (<u>See</u> Mem. & Rec. at 11).[4] The more difficult question is whether she can establish the fifth.

In concluding that Mutual Sprinklers had no actual knowledge of the harassment, the Magistrate Judge found that "Smith failed to rebut or controvert Kennemer's testimony that the first time he 'became aware of any inappropriate sexual misconduct concerning Ms. Smith was when she

---

[4] Specifically, Smith's verified response to the Court's questionnaire establishes that she is female, was subject to repeated instances of harassment, the harassment was based on Smith's sex, and it was pervasive enough to affect a term, condition or privilege of her employment. (<u>See</u> Doc. 6, Attach.) For example, she relates various instances in which various co-workers attempted to fondle her breasts, asked whether she was wearing underwear, taunted her by using a newly-constructed ladies room, goosed her, threw a paper clip down her shirt and then reached in after it, commented about their own anatomy and made other gratuitously lewd comments. (<u>Id.</u>) Smith further states that the harassment at work caused her to be hospitalized and to enter therapy in the summer of 1995 after an overdose of medication; when she returned to work, the harassment continued and she was terminated within a few months. (<u>See</u> <u>id.</u> at 5.)

filed her charge of discrimination with the EEOC.'" The Court disagrees. Smith states that she complained on two occasions to Kennemer about being forced to share a restroom with male co-workers, who made jokes about her complaints, and that he was in a position to see a note that she had placed on the restroom door regarding the men's use of the ladies restroom, which another employee tore down in front of Kennemer and threw away. (See Doc. 6, Attach. at 4)(verified response to Court's questionnaire). While that incident may not have been overtly sexual, she further states that a co-worker, Carlos, indicated to her that Kennemer overheard employees making sexual comments and that Kennemer responded that "he didn't want to hear that kind of talk." (Id.). Second, Smith has presented evidence that her predecessor, Josephine Gainous, reported at least one incident to Kennemer in which a coworker made an exceedingly crude sexual comment, but that he responded that she "should not let things bother her." (Def.'s Resp. Mot. Summ. J., Ex. A).[5]

Alternatively, even if these two incidents, if proven true, would be insufficient to show that Mutual Sprinklers had actual notice of the harassment, coupled with other evidence, they support a finding of constructive knowledge.[6] As the Fifth Circuit explained in Sharp v. City of Houston,

---

[5] Mutual Sprinklers argues that Ms. Gainous's statements in the EEOC investigatory file and a second record from the Texas Workforce Commission should be excluded as hearsay. But the Court finds that such documents admissible as a public records or reports pursuant to Fed. R. Evid. 803(8)(c). See, e.g., Barfield v. Orange County, 911 F.2d 644, 649-50 (11th Cir. 1990); Garcia v. Gloor, 618 F.2d 264, 271-72 (5th Cir.1980).

[6] In the Court's view, the Magistrate Judge engaged in a circular analysis of this question. As to the issue of constructive knowledge, the Magistrate Judge stated, apparently in reliance on Sharp, see 164 F.3d at 930, that "[t]o impute constructive knowledge to the employer, the Court must find constructive knowledge on the part of someone whose actual knowledge also imputes knowledge to the employer." (Mem. & Rec. at 16). She then went on to consider what Kennemer or Corbin actually knew, not what they should have known by addressing, for example, the pervasiveness of the discriminatory conduct or the existence of an effective anti-harassment policy. See Sharp, 164 F.3d at 931(cautioning that courts must be careful "not to conflate the concepts of constructive and actual notice").

164 F.3d 923, 930 (5th Cir. 1999),

> if the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes, it is unreasonable not to have done so, and there is constructive notice. Further, the existence and effectiveness of an anti-harassment policy may be relevant in determining whether the employer should have known about the hostile environment, but an employer is not necessarily insulated from liability just because there is a grievance procedure, even if the victim has failed to utilize it.

Smith and Gainous's statements both demonstrate that the comments and actions of their coworkers were regular, pervasive, and continuing. Smith has also shown that the version of Mutual Sprinklers' employee handbook in effect at the time of her alleged harassment, while proscribing conduct likely to discriminate in a single sentence, contained absolutely no direction to employees about how or to whom incidents of discrimination should be reported. See Meritor Sav. Bank , 477 U.S. at 72-73 (noting that employer's policy against non-discrimination does not necessarily insulate it from liability where it lacked "procedures better calculated to encourage victims of discrimination to come forward."). Smith, in fact, did report the harassment to the Texas Employment Commission approximately six months before her termination, but that agency referred her to the EEOC and the Texas Department of Human Rights. (See Doc. 6, Attach. at 3.) This at least permits the inference that, had she known where to go with her problem, Smith would have reported the harassment to the appropriate personnel within the company. In light of this evidence, the Court concludes that there is a genuine issue of material fact whether Mutual Sprinklers should be charged with constructive knowledge of Smith's alleged harassment by her co-workers.

Consequently, because Smith has presented sufficient evidence to establish a genuine issue of material fact as to each of the five elements of her prima facie case, the Court concludes that Mutual Sprinklers' motion for summary judgment, based on the non-existence of the fifth element,

must be denied.  On the other hand, the Court agrees and Smith apparently does not contest that she has not made out a prima facie case of retaliation.  It is undisputed that Smith did not engage in protected activity--the filing of an EEOC complaint--until after she was terminated.  (See Compl., ¶ 5.).  Therefore, the Court agrees that she has not established a causal connection between her protected activity and her termination, see Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A., 139 F.3d 532, 540 (5th Cir. 1998), and summary judgment must be granted in favor of Mutual Sprinklers on this claim.  Accordingly,

IT IS ORDERED THAT the Memorandum and Recommendation of the United States Magistrate Judge filed in this cause on April 13, 1999 be and is ACCEPTED, in part, pursuant to 28 U.S.C. § 636(b)(1) such that Defendants' motion for summary judgment is GRANTED as to Plaintiff's claim for retaliation under Title VII, but is DENIED in all other respects;  and

IT IS FURTHER ORDERED THAT, in light of the disposition of all pending pretrial motions, the Court will terminate the referral of this cause to the Magistrate Judge.  In addition, and in accordance with the Memorandum and Recommendation, the Court will by separate order reset the trial date and deadlines for submission of the joint pretrial order and motions in limine and will appoint counsel to assist Plaintiff for those purposes.

SIGNED and ENTERED this 2nd day of July, 1999.

ORLANDO L. GARCIA
UNITED STATES DISTRICT COURT JUDGE

9